[Cite as *In re G.S.*, 2025-Ohio-2949.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| IN THE MATTER OF:<br><br>G.S. and D.S. | Case Nos. 2025 CA 00025<br>2025 CA 00026<br><br><u>Opinion And Judgment Entry</u><br><br>Appeal from the Licking County Court of Common Pleas, Juvenile Division, Case Nos. F2025-0016 and F2025-0017<br><br>Judgment: Affirmed<br><br>Date of Judgment Entry: August 15, 2025 |

**BEFORE:** Craig R. Baldwin; Andrew J. King; Kevin W. Popham, Appellate Judges

**APPEARANCES:** JENNY WELLS, Licking County Prosecuting Attorney, KENNETH W. OSWALT, Assistant Licking County Prosecuting Attorney; for Plaintiff-Appellee; JERMAINE L. COLQUITT, for Defendant-Appellant Mother L.S.

OPINION

*Baldwin, P.J.*

{¶1} Appellant L.S., biological mother of minor children G.S. and D.S., appeals the decision of the Licking County Court of Common Pleas, Juvenile Division, awarding permanent custody of G.S. and D.S. to appellee Licking County Jobs and Family Services - Children Services Division (LCJFS).

**STATEMENT OF THE FACTS AND THE CASE**

**{¶2}** The appellant and her minor children[1], including G.S. and D.S., have been involved with appellee LCJFS since March of 2022. The appellant's children were removed from her custody in May of 2022 after she was involved in a motor vehicle accident while driving drunk with her children in the vehicle. None of the children were properly restrained, and all sustained injuries, with G.S. sustaining significant injuries. The appellant pleaded guilty to one count of vehicular assault and one count of assault on a peace officer, both fourth degree felonies. She was sentenced in October of 2022 to thirty-six months in prison, was granted judicial release in April of 2023, and gave birth to her sixth child in June of 2023. Legal custody of the children was returned to the appellant in May of 2024, with an Order of Protective Supervision which was to remain in effect through November 8, 2024.

**{¶3}** On October 25, 2024, the appellant attempted to pick one of the children up from middle school with her two youngest children in the vehicle. She struck two parked cars, left the scene, and engaged in a brief pursuit with law enforcement. She was arrested and charged with obstructing official business, leaving the scene of an accident, operating a vehicle while under the influence, and two counts of child endangering. In addition, her actions placed her in violation of her parole in connection with the 2022 criminal matter. She is currently incarcerated with an expected release date in May of 2027.

---

[1] The appellant has six children. The two cases currently before this Court involve only her two oldest children, G.S. and D.S.

**{¶4}** On January 17, 2025, appellee LCJFS filed a complaint requesting that permanent custody of G.S. and D.S.[2] be awarded to the appellee. The biological father of G.S. and D.S. was properly served with the complaint, and was represented by counsel during the proceedings. However, he does not have a relationship with G.S. and D.S., refused to participate in a case plan or otherwise engage with appellee LCJFS, and did not attend hearings. A GAL was appointed for the children. An uncontested adjudicatory hearing was held on February 26, 2025. G.S. and D.S. were adjudicated dependent, and are currently in the care of a foster family.

**{¶5}** A dispositional hearing was conducted on March 24, 2025, at which the court heard testimony from Caseworker Erin Heard and G.S. and D.S.'s maternal aunt, who was their previous kinship caregiver. In addition, the GAL testified that G.S. and D.S. are traumatized by the 2024 incident and the fact that they have once again been removed from the appellant's custody. The GAL testified further that G.S. and D.S. struggle with anger and mental health issues, are angry with the appellant, and have feelings of abandonment. The GAL also testified that G.S. and D.S. were doing very well in their foster placement. The GAL testified further that G.S. and D.S. expressed to her that if they cannot be with the appellant or their aunt, they wished to remain with their foster family, who are meeting all of their needs.[3] Finally, the GAL recommended that the court grant permanent custody to the appellee, as it would be in G.S. and D.S.'s best

---

[2] The appellant's four younger children have been placed with a family member who cared for the children when they were previously removed from the appellant; however, said family member, who has children of her own, is unable to care for all six of the appellant's children. The youngest child's biological father, who is not the father of G.S. and D.S., is participating in a case plan with the agency.

[3] The foster family has expressed an interest in adopting G.S. and D.S. if they are interested in adoption.

interest. The GAL's written report was also submitted as an exhibit. The appellant, who was incarcerated at the time of the hearing, appeared via video and opposed appellee LCJFS's request for permanent custody.

{¶6}   On March 31, 2025, a Magistrate's Decision was issued which placed G.S. and D.S. into the permanent custody of appellee LCJFS, concluding that they could not be placed with either parent within a reasonable time, that kinship placement was not available, and that permanent custody was in their best interest. The Magistrate's Decision contained a Notice to Parties which advised that "a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion . . . unless the party timely and specifically objects to that factual finding or legal conclusion as required by Juv. R. 40(D)(3)(b)." The Notice goes on to state that "[p]ursuant to Juv. R. 40(D)(3)(b), a party may file written objections to a magistrate's decision within **fourteen (14)** days of the filing of the decision, whether or not the court has adopted the decision during that fourteen-day period…." (Emphasis original.)

{¶7}   The trial court issued a Judgment Entry on March 31, 2025, adopting and approving the Magistrate's Decision. The court specifically stated in its entry that the parties have the right to file objections to the Magistrate's Decision pursuant to the Notice to Parties, stated that the filing of an objection would act as an automatic stay of the execution of the Judgment Entry, and outlined all steps necessary to file objections - including the necessity for ordering a transcript. The appellant did not, however, file objections to the Magistrate's Decision, instead filing a Notice of Appeal on April 30, 2025.

{¶8}   The appellant filed a Merit Brief on June 12, 2025, in which she sets forth the following sole assignment of error:

**{¶9}** "I. THE TRIAL COURT ERRED IN GRANTING PERMANENT CUSTODY TO THE AGENCY WHERE THE RECORD DOES NOT SUPPORT A FINDING THAT PERMANENT CUSTODY WAS IN THE CHILD'S BEST INTEREST."

**{¶10}** For the reasons that follow, we find the appellant's arguments to be without merit and affirm the decision of the trial court.

## STANDARD OF REVIEW

**{¶11}** Juv. R. 40((3)(D)(b) establishes the procedure for objecting to a magistrate's decision, and states:

(b) Objections to Magistrate's Decision.

(i)     Time for Filing. A party may file written objections to a magistrate's decision within fourteen days of the filing of the decision, whether or not the court has adopted the decision during that fourteen-day period as permitted by Juv.R. 40(D)(4)(e)(i). If any party timely files objections, any other party may also file objections not later than ten days after the first objections are filed. If a party makes a timely request for findings of fact and conclusions of law, the time for filing objections begins to run when the magistrate files a decision that includes findings of fact and conclusions of law.

(ii)     Specificity of Objection. An objection to a magistrate's decision shall be specific and state with particularity all grounds for objection.

(iii)     Objection to Magistrate's Factual Finding; Transcript or Affidavit. An objection to a factual finding, whether or not specifically designated as a finding of fact under Juv.R. 40(D)(3)(a)(ii), shall be supported by a transcript of all the evidence submitted to the magistrate relevant to that finding or an affidavit of that evidence if a transcript is not available. With leave of court,

alternative technology or manner of reviewing the relevant evidence may be considered. The objecting party shall file the transcript or affidavit with the court within thirty days after filing objections unless the court extends the time in writing for preparation of the transcript or other good cause. If a party files timely objections prior to the date on which a transcript is prepared, the party may seek leave of court to supplement the objections.

(iv)     Waiver of Right to Assign Adoption by Court as Error on Appeal. Except for a claim of plain error, a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Juv.R. 40(D)(3)(a)(ii), unless the party has objected to that finding or conclusion as required by Juv.R. 40(D)(3)(b).

The appellant failed to file objections to the Magistrate's Decision. Thus, she has waived all but plain error on appeal.

{¶12}  This Court has discussed plain error as follows:

We apply the doctrine of plain error cautiously and only under exceptional circumstances to prevent a manifest miscarriage of justice. *State v. Rohaley*, 5th Dist. Stark No. 1998CA00092, 1999 WL 4505, *4 In that regard, "[T]he test for plain error is stringent." *State v. Ellison,* 4th Dist. No. 16CA16, 2017-Ohio-284, 81 N.E.3d 853, ¶ 27. "To prevail under this standard, the defendant must establish that an error occurred, it was obvious, and it affected his or her substantial rights." *State v. Spaulding,* 151 Ohio St.3d 378, 2016-Ohio-8126, 89 N.E.3d 554, ¶ 64. An error affects substantial rights only if it changes the outcome of the trial. *Id.*

*State v. Lloyd*, 2021-Ohio-2420, ¶ 43 (5th Dist.). The burden of establishing plain error lies with the appellant. *Id.* at ¶44.

## ANALYSIS

**{¶13}** Plain error was discussed in the context of permanent custody by the court in *In re P.E.*, 2023-Ohio-2438 (12th Dist.), a case that is factually similar to the within matter:

In her single assignment of error, Mother challenges the juvenile court's decision to grant permanent custody of P.E. to CCDJFS. However, as noted above, Mother never objected to the magistrate's March 2, 2023 decision recommending the juvenile court grant CCDJFS' motion for permanent custody. Mother instead filed a notice of appeal. "By failing to object to the magistrate's decision in a case involving termination of parental rights," such as the case here, "an appellant waives the right to assign as error on appeal the trial court's adoption of any finding of fact or conclusion of law." *In re Stephens*, 12th Dist. Butler Nos. CA2001-01-018 and Butler Nos. CA2001-01-021, 2001-Ohio-8711, 2001 Ohio App. LEXIS 4451 *4 (Oct. 1, 2001). The Rules of Juvenile Procedure similarly "provides that, except for a claim of plain error, a party waives the right to assign error on appeal with respect to the juvenile court's adoption of any factual finding or legal conclusion 'unless the party has objected to that finding or conclusion as required by Juv.R. 40(D)(3)(b).' " *In re M.R.*, 12th Dist. Butler Nos. CA2018-07-145 thru Butler Nos. CA2018-07-147, 2018 WL 6620196, 2018-Ohio-5047, ¶ 16, quoting Juv.R. 40(D)(3)(b)(iv).

"This rule 'embodies the long-recognized principle that the failure to draw the trial court's attention to possible error when the error could have been corrected results in a waiver of the issue for purposes of appeal.' " *In re R.A.*, 8th Dist. Cuyahoga No. 110541, 2021 WL 5446917, 2021-Ohio-4126, ¶ 23, quoting *In re Etter*, 134 Ohio App.3d 484, 492, 731 N.E.2d 694 (1st Dist.1998) ("[t]he waiver under Juv.R. 40[E][3][b] embodies the long-recognized principle that the failure to draw the trial court's attention to possible error, by objection or otherwise, when the error could have been corrected, results in a waiver of the issue for purposes of appeal"). Therefore, because Mother did not, as required by Juv.R. 40(D)(3)(b), file any objections to the magistrate's decision recommending the trial court grant permanent custody of P.E. to CCDJFS, Mother has waived all but plain error on appeal. *See, e.g., In re K.M.*, 12th Dist. Butler Nos CA2020-03-031, 2020 WL 3637936 thru Butler Nos CA2020-03-033, 2020 WL 3637936, 2020-Ohio-3602, ¶ 22 (holding that, in a permanent custody case, "Mother's challenge is limited to plain error" where "Mother failed to object to the magistrate's decision as required by Juv.R. 40[D][3][b]").

Nowhere within Mother's brief does she assert a claim of plain error. "This court has previously ruled that unless the appellant argues a claim of plain error, the appellant has waived claimed errors not objected to below." *In re K.S.*, 12th Dist. Butler No. CA2022-09-081, 2023 WL 3963825, 2023-Ohio-1951, ¶ 34. Therefore, under normal circumstances, Mother would ordinarily be precluded from challenging the juvenile court's permanent custody decision on appeal. Nevertheless, because permanent custody

decisions are tantamount to the death penalty in a criminal case, this court will consider whether the juvenile court's decision granting permanent custody of P.E. to CCDJFS constitutes plain error. *In re S.F.T.*, 12th Dist. Butler Nos. CA2010-02-043, 2010 WL 3159582 thru Butler Nos. CA2010-02-046, 2010 WL 3159582, 2010-Ohio-3706, ¶ 10 ("the permanent termination of parental rights has been described as the family law equivalent of the death penalty in a criminal case").

*Id.* at ¶¶ 10-12. In *P.E.,* just as in this case, the mother failed to object to the magistrate's decision, and failed to argue plain error on appeal. The appellant herein mentions plain error only one time, in the conclusion section of her Merit Brief: "[e]ven under plain error review, terminating parental rights without fully weighing all best interest factors or exploring alternatives constitutes error."

**{¶14}** The appellant has made no cognizable plain error argument, and as a result we could end our analysis here by finding her sole assignment of error to be without merit. However, because the permanent termination of parental rights is the family law equivalent of the death penalty in a criminal case, we will consider whether the trial court's decision to grant permanent custody of G.S. and D.S. to appellee LCJFS constitutes plain error.

**{¶15}** As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. *Cross Truck v. Jeffries* (Feb. 10, 1982), Stark App. No. CA5758. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not

be reversed as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Constr.* (1978), 54 Ohio St.2d 279.

{¶16} R.C. 2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody. R.C. 2151.414(A)(1) mandates the trial court schedule a hearing and provide notice thereof when a motion for permanent custody of a child is filed by a public children services agency or private child placing agency that has temporary custody of the child or has placed the child in long term foster care. The trial court satisfied this mandate.

{¶17} R.C. 2151.414(B) authorizes the trial court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply: (a) the child is not abandoned or orphaned, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents; (b) the child is abandoned; (c) the child is orphaned and there are no relatives of the child who are able to take permanent custody; or, (d) the child has been in the temporary custody of one or more public children services agencies or private child placement agencies for twelve or more months of a consecutive twenty-two month period.

{¶18} R.C. 2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, the trial court will usually determine whether one of the four circumstances delineated in R.C. 2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child.

{¶19} If the child is not abandoned or orphaned, the focus turns to whether the child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents. Under R.C. 2151.414(E), the trial court must consider all relevant evidence before making this determination. The trial court is required to enter such a finding if it determines, by clear and convincing evidence, that one or more of the factors enumerated in R.C. 2151.414(E)(1) through (16) exist with respect to each of the child's parents. In this case the trial court found that G.S. and D.S. could not, and should not, be placed with either parent within a reasonable time, and further found that the parents had both abandoned the children.

{¶20} The appellant argues that the trial court erred when it found that granting permanent custody of G.S. and D.S. to appellee LCJFS was in the children's best interest, and that the court's decision was not supported by sufficient evidence and was against the manifest weight of the evidence. The appellant does not support this argument with references to the evidence adduced during the dispositional hearing, because her failure to object to the Magistrate's Decision and provide the trial court with a transcript of the proceedings precluded her from providing a transcript of the proceedings to this Court. Instead, she makes references to the Magistrate's Decision in support of her argument that the trial court erred.

{¶21} The Magistrate's Decision, however, demonstrates the sufficiency and manifest weight of the evidence herein. The magistrate heard the testimony of Caseworker Erin Heard, the GAL, and the children's maternal aunt, and reviewed exhibits admitted into evidence. According to the Magistrate's Decision, Caseworker Heard testified regarding agency concerns that G.S. and D.S. "are in need of a stable, safe, and secure living arrangement that will consistently provide for their basic and special needs,

and they are in need of a caretaker that can meet these needs while providing them with safety and protection." Ms. Heard testified that the children's father indicated he wished to have custody of G.S. and D.S., but that he refused to work on a case plan or attend visits with them, and had not seen them in six years. Further, while the appellant may have been able to work a case plan while incarcerated, the earliest she will be released from prison is May of 2027.

**{¶22}** In addition, the GAL testified that that G.S. and D.S. are traumatized, that they struggle with anger and mental health issues, and have feelings of abandonment; that G.S. and D.S. were doing very well in their foster placement; and, that the grant of permanent custody to the appellee would be in G.S. and D.S.'s best interest.

**{¶23}** The Magistrate found clear and convincing evidence had been presented to the court establishing that G.S. and D.S. could not be placed with the appellant or their biological father within a reasonable time, nor should they be, as "each has demonstrated a lack of commitment towards the children by failing to regularly support, visit, or communicate with the children when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the children." The court found further that it was in the children's best interest for permanent custody to be granted to appellee LCJFS.

**{¶24}** We find that the appellant has failed to establish an obvious error occurred in the trial court proceedings which affected her substantial rights. Furthermore, we find that the trial court's decision to grant permanent custody of G.S. and D.S. was supported by clear and convincing evidence. Accordingly, the appellant's sole assignment of error is without merit.

## CONCLUSION

{¶25} Based upon the foregoing, we overrule the appellant's sole assignment of error and affirm the decision of the Licking County Court of Common Pleas, Juvenile Division.

{¶26} Costs to Appellant.

By: Baldwin, P.J.

King, J. and

Popham, J. concur.